UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JOSEPH MALDANADO, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:25-cv-454 |
| ) | |
| PROFESSIONAL ANIMAL ) | |
| RETIREMENT CENTER (PARC) a/k/a BLACK ) | |
| PINE ANIMAL SANCTUARY, ) | |
| ) | |
| Defendant. ) | |

**DEFENDANT'S BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Defendant, Professional Animal Retirement Center, Inc. a/k/a Black Pine Animal Sanctuary, by counsel and pursuant to Rules 12(b)(1), 12(b)(2), 12(b)(4) and 12(b)(5) of the Federal Rules of Civil Procedure, in support of its Motion to Dismiss the Complaint, states as follows:

### I.    FACTUAL BACKGROUND

Joseph Maldonado bred, owned, and maintained the bloodlines of tigers named Prince, Ima, Elvis, and Patronus (collectively, the "Big Cats"), who now reside at Professional Animal Retirement Center, Inc., also known as Black Pine Animal Sanctuary ("Black Pine"), located at 1426 W 300 N, Albion, Indiana. (ECF 1 at 1, 4).

Maldonado alleges "deep, profound, specific and concrete interests in the welfare and genetic heritage of the Big Cats," arising from his personal and professional history with them, collaboration with a university research program, and his "continued and ongoing interest in seeing these bloodlines maintained and continued for possible further and future research, both during his current incarceration and after his release" scheduled for March 18, 2036. (ECF 1 at 3,

4, 14; Exhibit B). According to Maldonado, he "has developed a lifelong bond with them, and has a specific and ongoing interest in both their well-being, and future legacy continuing." (ECF 1 at 4).

Maldonado asserts that Black Pine is violating the Endangered Species Act's "take" prohibition for endangered species under 16 U.S.C. § 1538(a)(1) by "harming," "harassing," and "wounding" the Big Cats, as well as unlawful possession of animals taken in violation of the ESA. (ECF 1 at 6-14).

Maldonado alleges the Big Cats are being harmed, harassed, and wounded in three principal ways: by (threatened or actual) spaying and neutering that sterilizes and injures them and disrupts essential behavioral patterns, including breeding; by exhibition practices that purportedly force the Big Cats into proximity and constant public view, creating stress, disrupting normal behavioral patterns, including resting and swimming, and increasing the likelihood of injury; and by confining the Big Cats in allegedly small, barren, and environmentally inadequate enclosures without sufficient enrichment, shade, shelter, or complexity, thereby frustrating species-typical behaviors and causing physical and psychological injury. (ECF 1 at 6-14).

Maldonado makes no allegation that he has visited the Big Cats during their residency at Black Pine, and he makes no mention of any intent to visit the Big Cats at Black Pine in the future.

Maldonado filed a "Proof of Service" indicating that the Complaint and Summons were "Posted Fri 09/05/2025 11:46 AM 1426 W Main St Albion, IN 46701." (ECF 3). The Complaint

2

and Summons were rubber-banded without an envelope and discovered on the door to the commissary building. (Exhibit A at ¶8). The commissary building is one of several buildings at Black Pine, and it is not the building through which the public enters from the public parking lot. *Id*. at ¶¶3-7. The Complaint and Summons were not handed to any person or left with any person. (ECF 3; Ex. A at ¶8). The Complaint and Summons were not mailed to Black Pine. (ECF 3; Ex. A at ¶11).

## II. ARGUMENT

### A. The Complaint should be dismissed under Rule 12(b)(1) for lack of subject matter jurisdiction because Maldonado lacks Article III standing.

At this stage, Defendant's challenge to standing under Rule 12(b)(1) is a facial attack on the Complaint. *See Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1007 (7th Cir. 2021).

Thus, the Court should "look to the complaint and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction…[,] accept[ing] all well-pleaded factual allegations as true and draw[ing] all reasonable inferences in favor of the plaintiff…." *Id*. The Court may use judicially noticed facts in evaluating a facial challenge to a complaint's allegations. *See Florance v. Barnett*, 2023 WL 1815946, at *2 (N.D. Ind. Feb. 8, 2023), *aff'd*, 2023 WL 7017085 (7th Cir. Oct. 25, 2023).

> It is well-settled that
>
> to satisfy Article III's standing requirements, a plaintiff must show (1) it has suffered an "injury in fact" that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and 3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000).

3

### 1. Maldonado fails to articulate an actual or imminent injury by failing to allege past or future exposure to the Big Cats at Black Pine.

Maldonado fails to articulate an actual or imminent injury that confers standing. He does not allege that he has ever visited Black Pine to witness how the Big Cats are treated. Most notably, he does not allege any intention to visit the Big Cats at Black Pine in the future. (ECF 1).

In a citizen action brought under the ESA, the relevant showing for purposes of Article III standing is not injury to the animal but injury to the plaintiff. *See Friends of the Earth*, 528 U.S. at 181. Having never been exposed to the Big Cats during their residency at Black Pine, and having no intention to visit them in the future, Maldonado himself has suffered no legally cognizable injury. Maldonado's Complaint is simply an invitation to recognize the "animal nexus" or "vocational nexus" approaches that the Supreme Court of the United States firmly rejected in *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 566 (1992). Standing is not conferred based solely on a person's interest—whether personal or professional—in studying or seeing endangered animals. Such a theory is "beyond all reason." *Lujan*, 504 U.S. at 566.

In *Lujan*, the mere intention to visit and view the animals in question, "without any description of concrete plans, or indeed even any specification of when the some day will be—d[id] not support a finding of … 'actual or imminent' injury…." *Id.* at 564. Maldonado makes even less of a showing than the plaintiffs in *Lujan* because Maldonado lacks any intention to visit the Big Cats for either personal or professional research reasons. (ECF 1). Thus, Maldonado lacks an actual or imminent injury, which deprives this Court of subject matter jurisdiction. *See Friends of the Earth,* 528 U.S. at 180–81.

Maldonado's posture resembles that of plaintiffs in *New England Anti-Vivisection Soc'y v. United States Fish & Wildlife Serv.*, 208 F. Supp. 3d 142, 170 (D.D.C. 2016), who asserted injury due to "the mere knowledge—presumably acquired while sitting at home—that the animals that they love will be sent somewhere that is not up to [their] personal standards." As Supreme Court Justice Ketanji Brown Jackson concluded, while presiding as a District Court Judge of the District of Columbia, such mere knowledge without any observation, use, or enjoyment of the animals does not qualify as an aesthetic injury to support standing. *See New England Anti-Vivisection Soc'y*, 208 F. Supp. 3d at 169–171. Moreover, the plaintiffs' asserted injury in *New England Anti-Vivisection Soc'y* was too speculative because "there is no evidence that any of these individual plaintiffs actually have plans to go … see these animals." *Id.* at 173. For the same reasons, Maldonado's asserted injury is too speculative to qualify as an actual or imminent injury, and Maldonado therefore lacks Article III standing. *See Friends of the Earth,* 528 U.S. at 180–81.

Even jumping to the unsupported conclusion that Maldonado intends to visit the Big Cats in the future, that time is more than a decade away: Maldonado's prison release date is scheduled for March 18, 2036. (Exhibit B). The prevailing circumstances of care and treatment for the Big Cats ten years in the future is only conjecture. For instance, over the next ten years it is possible for Black Pine to obtain accreditation with the American Zoological Association and commence participation in the Tiger Species Survival Plan, which would directly remedy Maldonado's concerns. (ECF 1-3 at 3). Thus, any harm that would befall Maldonado based on how the Big Cats may be treated if he were to visit ten years from now is hypothetical and conjectural, not actual or imminent. *See Lujan*, 504 U.S. at 560. Such a hypothetical injury does not confer standing. *See id*.

### 2. Maldonado's alleged research interest is too speculative to comprise an injury in fact.

Maldonado refers to prior participation in "research programs" without asserting that those programs are ongoing. (ECF 1 at 3). Maldonado asserts that

> over a 16-year period, [Maldonado] selectively bred, and maintained the bloodlines of these animals for use in both a breeding program as well as a research study in conjunction with the University of Texas A&M. Mr. Maldonado has a continued and ongoing interest in seeing these bloodlines maintained and continued for possible further and future research, both during his current incarceration and after his release.

(ECF 1 at 4). Maldonado also asserts that he

> bred these cats as part of an ongoing research study that he had in place with the University of Texas A&M. These cats' genetics are and were essential to that research, and Maldonado has a compelling interest in the bloodlines being maintained and continued into the future. These cats were selectively bred by Maldonado for this purpose. Due to these facts, Mr. Maldonado also has an intense bond with each of these cats and has a continued interest in their well being.

(ECF 1 at 14).

Maldonado asserts that he bred the cats as part of a research study. (ECF 1 at 14). This indicates something done in the past. He states that he "had" a research study in place with University of Texas A&M. *Id*. This indicates that the study was in place in the past and is no longer in place. Maldonado characterizes further and future research as "possible." (ECF 1 at 4). Maldonado does not allege that he "has" a research study "in place" with a university. He calls the research study "ongoing" in paragraph 67 (ECF 1 at 14), with the context indicating that the study was ongoing in the past when the cats were bred.

Maldonado's allegations permit the inference that 'maybe someday' he could possibly observe the Big Cats in pursuit of an undefined research study, but such vague intentions are insufficient to demonstrate an actual or imminent injury. *See Lujan*, 504 U.S. at 564.

Although Maldonado refers to an "ongoing research study" and alleges that "[t]hese cats' genetics are and were essential to that research," those allegations are inconsistent with his allegations that the research study was formerly in place and may lead to "possible further and future research." (ECF 1 at 4, 14). When faced with internally inconsistent allegations, the Court is not required to accept any of them as true. "It is well established that, where a plaintiff's own pleadings are internally inconsistent, a court is neither obligated to reconcile nor accept the contradictory allegations in the pleadings as true in deciding a motion to dismiss." *Jiangbo Zhou v. Lincoln Elec. Co.*, 2020 WL 2512865, at *4 (S.D. Ohio May 15, 2020) (internal quotation and citation omitted). Thus, the Court is not required to accept that a research study is presently ongoing concerning the Big Cats, and the absence of a research study eliminates any injury that Maldonado may suffer by the frustration of his research efforts.[1]

### 3. Any injury to Maldonado's alleged research interest is not redressable because the requested relief would not give Maldonado the right to control breeding decisions for the Big Cats.

In any event, even assuming *arguendo* that Maldonado's research interests give rise to an actual injury, Maldonado nevertheless lacks standing because it is not likely for this injury to be redressed by a favorable decision. *See Friends of the Earth,* 528 U.S. at 180–81. According to Maldonado, he has been and continues to be interested in maintaining bloodlines of the Big Cats through his selective breeding practices. (ECF 1 at 4, 14). However, Maldonado no longer owns the Big Cats, and Maldonado does not ask this Court to restore any of his ownership rights. (ECF 1 at 4). Without ownership rights, Maldonado has no right to make breeding choices for the Big Cats or otherwise influence their genetics or bloodline. The relief sought by Maldonado under the ESA would not convert the Big Cats into Maldonado's research subjects. (ECF 1 at 16-17).

---

[1] The University of Texas A&M has not appeared in this action to assert that Black Pine has injured or may injure the University's research efforts.

Thus, Maldonado lacks standing because his asserted research frustrations are not redressable by an order from this Court. *See Friends of the Earth,* 528 U.S. at 180–81.[2] Accordingly, this action should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

### B. Due to insufficient process and insufficient service of process, this action should be dismissed for lack of personal jurisdiction over Defendant.

#### 1. Valid service of process is required for the Court's assertion of personal jurisdiction.

"Valid service of process is a prerequisite to a district court's assertion of personal jurisdiction.... Valid service of process comprises more than actual notice; it requires a legal basis for holding the defendant susceptible to service of the summons and complaint." *Smith v. Casilo Consulting, LLC*, 2023 WL 2914261, at *2 (N.D. Ind. Apr. 12, 2023).

#### 2. Maldonado did not effect service in a manner authorized by the Federal Rules of Civil Procedure.

Rule 4(h)(1)(B) authorizes service on a domestic corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process…." Maldonado did not accomplish this because the Complaint and Summons were not delivered to anyone. (ECF 3; Ex. A at ¶8).

Service can also be accomplished pursuant to Rule 4(h)(1)(A), incorporating "the manner prescribed by Rule 4(e)(1) for serving an individual," which in turn leads back to Indiana's state court rules, based on this Court's location. *See also Smith,* 2023 WL 2914261, at *2.

---

[2] To the extent Maldonado wants to conduct research merely by observation of the Big Cats, without influencing any variables in their environment, he would need to visit them. Maldonado does not allege that he has any such plans (and he certainly will not for another decade). (ECF 1; Ex. B). Thus, observational research would not support Maldonado's standing because he has not shown any actual or imminent injury to observational research, for the same reasons discussed in Section II(A)(1) above. *See Lujan,* 504 U.S. at 564.

### 3. Maldonado did not effect service as authorized under the Indiana Rules of Trial Procedure.

Under Indiana Trial Rule 4.6(A)(1), "[s]ervice upon an organization may be made as follows: (1) In the case of a domestic or foreign organization upon an executive officer thereof, or if there is an agent appointed or deemed by law to have been appointed to receive service, then upon such agent." Pursuant to Indiana Trial Rule 4.6(B), service "shall be made on the proper person in the manner provided by these rules for service upon individuals…." Alternatively,

> [w]hen shown upon an affidavit or in the return, that service upon an organization cannot be made as provided in subdivision (A) or (B) of this rule, service may be made by leaving a copy of the summons and complaint at any office of such organization located within this state with the person in charge of such office.

Ind. Trial Rule 4.6(C).

Thus, service on an organization is made by service upon an executive officer or agent appointed by law. *See* Ind. Trial Rule 4.6(A)(1). The manner for effecting service on such person *must* comply with Indiana Trial Rule 4.1. *See* Ind. Trial Rule 4.6(B) (service "*shall* be made… in the manner provided by these rules for service upon individuals.") (emphasis added).

> Arriving at Indiana Trial Rule 4.1(A), the following methods of service are authorized:
>
> (1) sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter; or
>
> (2) delivering a copy of the summons and complaint to him personally; or
>
> (3) leaving a copy of the summons and complaint at his dwelling house or usual place of abode;[3] or
>
> (4) serving his agent as provided by rule, statute or valid agreement.[4]

---

[3] A follow-up copy by mail is also required for this method. *See* Ind. Trial Rule 4.1(B).
[4] A follow-up copy by mail is also required for this method. *See* Ind. Trial Rule 4.1(B).

9

Maldonado accomplished none of these. The Complaint and Summons were not personally delivered to or left with anyone; they were not left at a dwelling house or place of abode; and they were not mailed. (ECF 3; Ex. A at ¶¶8, 11, 12).

Moreover, Indiana courts are clear that proper service requires the summons to be "*sent* to the proper person." *Volunteers of Am. v. Premier Auto Acceptance Corp.*, 755 N.E.2d 656, 660 (Ind. Ct. App. 2001) (emphasis in original) (holding that summons sent to the defendant organization without direction to a specific individual within the organization was insufficient). For Indiana Trial Rule 4.6, it is sufficient that "service [be] addressed to the 'highest available officer,' the 'Highest Executive Officer,' or the 'chief executive officer,'" but failure to address a summons to any executive officer or registered agent renders service inadequate. *Id*. Here, process was insufficient because the summons suffers the same fatal flaw as the summons in *Volunteers of America*: it is not directed to an officer or registered agent of Defendant. (ECF 2).

Failure to comply with Indiana's standards for service of process deprives a court of personal jurisdiction over a defendant. *See Volunteers of Am.*, 755 N.E.2d at 659 ("ineffective service of process prohibits a trial court from having personal jurisdiction over a defendant"); *Swiggett Lumber Const. Co., Inc. v. Quandt*, 806 N.E.2d 334, 336 (Ind. Ct. App. 2004); *Barrow v. Pennington*, 700 N.E.2d 477, 479 (Ind. Ct. App. 1998) ("statutes prescribing the manner of service of summons are mandatory, and must be strictly complied with to vest the court with jurisdiction.") (internal quotation and citation omitted). Because Maldonado has not validly served Black Pine with sufficient process, the action should be dismissed for lack of personal jurisdiction. *See id.*

### 4. An outright failure to comply with Indiana's rules for service of process is not cured by Indiana Trial Rule 4.15(F).

Indiana Trial Rule 4.15(F) provides that "[n]o summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond."

Indiana courts "have previously concluded that failure to technically comply with the trial rules will not defeat a trial court's jurisdiction so long as a party substantially complies with the trial rules…. In all such cases, however, there was some attempt to comply with all of the relevant and mandatory trial rules." *Barrow*, 700 N.E.2d at 479. Indiana Trial Rule 4.15(F) "will not excuse noncompliance" with the Indiana Trial Rules. *Id*.

The defects in Maldonado's service attempt are wholesale and not merely technical. The process server did not deliver the documents to any person and did not mail them to anyone. (ECF 3; Ex. A at ¶¶8, 11). The Indiana Trial Rules contemplate leaving documents unattended only when documents are left at a dwelling house or usual place of abode, which did not happen here. *See* Ind. Trial Rule 4.1(A)(3); (Ex. A at ¶12).

Black Pine's actual knowledge of the lawsuit reveals nothing about the sufficiency of Maldonado's attempted service. Black Pine was informed of Maldonado's Complaint by a local news reporter on August 29, 2025, before a summons had even been issued. (Ex. A at ¶10). As explained by Judge Shields, "[a]ctual knowledge of the pending lawsuit derived from sources other than service is not relevant to the question whether the manner of service satisfies due process." *Washington v. Allison*, 593 N.E.2d 1273, 1275 (Ind. Ct. App. 1992).

The attempted service here closely resembles the attempted service in *Anderson v. Wayne Post 64, Am. Legion Corp.,* 4 N.E.3d 1200 (Ind. Ct. App. 2014). In *Anderson*, the complaint and

summons were rolled up and left on the door of an outbuilding used for storage, when the main building for business activity was located on the same parcel of property. *See Anderson*, 4 N.E.3d at 1203–04.

The Court of Appeals recognized the plaintiff's failure to comply with Indiana Trial Rule 4.1(A)'s provisions for service by certified mail or personal delivery, as well as the failure to comply with Indiana Trial Rule 4.6(C), which authorizes—under some circumstances—leaving the summons and complaint with someone in charge of the defendant's office. *See Anderson*, 4 N.E.3d at 1208.

> [T]he evidence here fails to show that Deputy Jefferson left the summons and complaint with anyone in particular or at a building from which business was actually being conducted…. Instead, the undisputed evidence demonstrates that Deputy Jefferson left the documents at the outbuilding at 601 South Holt Road rather than taking those documents to the main building.

*Anderson*, 4 N.E.3d at 1209. Based on a failure to utilize various other methods that would have been better calculated to provide actual notice, the Court of Appeals concluded that Indiana Trial Rule 4.15(F) did not save plaintiff's failure to adequately serve process. *See Anderson*, 4 N.E.3d at 1209-10 (affirming trial court's ruling that it did not acquire personal jurisdiction over the defendant).

Here, Black Pine also has multiple buildings on its property. (Ex. A at ¶3). The road leading to the property is marked with plain signage towards the public parking lot. (Ex. A at ¶¶5-6). From the public parking lot, there is a single point of entrance onto the property, which is through a building housing the Wolf Den gift shop. (Ex. A at ¶5). Black Pine had a staff member attending to the Wolf Den during the entire morning of September 5, 2025, which encompasses the date and time shown on the return of summons. (ECF 3; Ex. A at ¶9). The staff

member desk sits in open view immediately inside and to the left of the public entrance door. (Ex. A at ¶9).

The commissary building is not accessible from the public parking lot, but it can be reached by disregarding signage directing drivers to the visitor parking lot and instead turning into the service entrance which leads to a separate staff parking lot. For security reasons, the door to the commissary building is locked by an electronic keypad. (Ex. A at ¶7).

Instead of proceeding to a building where business was being conducted and attempting delivery to a person capable of accepting service for Black Pine, the process server "posted" the Complaint and Summons on an ancillary building on Black Pine's property. (ECF 3). Moreover, the name and address of Defendant's registered agent are publicly available through the Indiana Secretary of State's website, and that information was apparently known to Plaintiff. (Ex. A at ¶2; Ex. A-1). On May 13, 2025, Plaintiff directed certified mail to Defendant's registered agent at the address matching Indiana Secretary of State records. (ECF 1-3; Ex. A-1). Plaintiff did not use certified mail, however, in attempting service of process. (ECF 3; Ex. A at ¶11).

Likewise, this Court should conclude that Maldonado's service attempt failed to comply with the Indiana Trial Rules, and that it falls outside the scope of the savings provision in Indiana Trial Rule 4.15(F). Due to insufficient process and service of process, this Court lacks personal jurisdiction over Defendant, and this action should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(2), (4) and (5). See *Anderson*, 4 N.E.3d at 1209-10.

### III.    CONCLUSION

For the foregoing reasons, the Court should dismiss this action for lack of subject matter jurisdiction and lack of personal jurisdiction over Defendant.

Respectfully Submitted,


*/s/ Bradley D. Hasler*
Bradley D. Hasler, #22384-49
Dentons Bingham Greenebaum LLP
2700 Market Tower
10 West Market Street
Indianapolis, Indiana 46204
Telephone:     (317) 686-5240
Facsimile:     (317) 236-9907
Email: bradley.hasler@dentons.com

*Attorney for Defendant, Professional Animal Retirement Center (PARC)*
*a/k/a Black Pine Animal Sanctuary*

14