IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| JOSEPH MALDONADO<br><br>*Plaintiff*,<br><br>v.<br><br>PROFESSIONAL ANIMAL RETIREMENT CENTER (PARC), aka BLACK PINE ANIMAL SANCTUARY, | Case: 1:25-cv-454 |

**DECLARATION OF JOSEPH MALDONADO**
*(In Support of Plaintiff's Opposition to Defendant's Motion to Dismiss)*

I, **Joseph Maldonado**, declare under penalty of perjury under the laws of the United States that the following is true and correct:

1. Background and Purpose

    1. I am the Plaintiff in this case. I submit this declaration to provide factual context for my standing under the Endangered Species Act (ESA), to correct factual misstatements contained in Defendant's Motion to Dismiss, and to demonstrate that service of process was proper and that I continue to suffer ongoing harm from Defendant's conduct.

    2. I make this declaration based upon my personal knowledge, records of my conservation and breeding work, correspondence with academic collaborators, and information available to me through my professional contacts and public records.

– 1 –

2. Professional and Scientific Background

3. I have spent over sixteen years breeding and maintaining endangered tigers for genetic conservation purposes. My work was not a commercial operation; it was rooted in conservation science and genetic research.

4. Between approximately 2004 and 2019, I developed and maintained a controlled breeding program designed to preserve genetic diversity within captive tiger populations. Each tiger was tracked, microchipped, and logged for inclusion in a research database supporting the *Tiger Genome Diversity Project* at **Texas A&M University's College of Veterinary Medicine**.

5. Through that program, I provided biological samples, pedigree information, and DNA sequencing data used to identify genetic markers relating to fertility and congenital conditions in tigers.

6. This work produced verifiable data, supported by correspondence with university researchers, showing that the lineages I established contributed to ongoing scientific studies. I remained in contact with collaborators through email and formal letters, many of which are maintained in my research records.

3. Identification of the Tigers and Lineage

7. The four endangered tigers at issue in this case—**Prince**, **Ima**, **Elvis**, and **Patronus**—were bred and raised under my supervision and care. Their lineage represents part of the genetic record I helped to establish for the research project referenced above.

8. Each of these animals is uniquely identified by microchip and photographic documentation. They are not abstract "animals in the wild," but specific, named individuals forming part of a verifiable bloodline.

9. These tigers were seized by federal authorities and later transferred to Defendant's facility, **Black Pine Animal Sanctuary**, in Albion, Indiana. Upon information and belief, Defendant then sterilized the animals, displayed them to paying visitors, and confined them in restricted, non-natural enclosures that lack appropriate enrichment and space.

10. Defendant's treatment of these animals directly frustrates the purpose of the breeding and research program for which they were developed and destroys the lineage continuity I spent years establishing.

4. Continuing Harm and Standing

11. Defendant claims that I lack standing because I am not physically present at the sanctuary and am currently incarcerated. That is incorrect.

12. My scientific and genetic interests are ongoing. The ESA extends standing to "any person" whose professional, scientific, aesthetic, or emotional interests are harmed by violations of the Act. Federal courts have repeatedly confirmed that such injuries are concrete and particularized, even when the plaintiff cannot physically visit the animals.

13. I continue to correspond with conservationists, researchers, and animal welfare advocates regarding the genetic lineage of my tigers and their contribution to the Tiger Genome Diversity Project. My professional identity and reputation remain linked to those animals.

14. Defendant's sterilization and exhibition of my tigers inflict a continuing injury by destroying their reproductive potential, nullifying the genetic data set I created, and undermining the conservation objectives I helped advance.

15. In addition to my scientific interests, I have suffered deep emotional distress knowing that animals I bred and raised are being confined and displayed in violation of the ESA's humane and protective purposes.

16. These professional and emotional harms are specific to me—they are not generalized grievances about the environment, but personal injuries traceable to Defendant's actions.

17. The harm continues every day those animals remain sterilized and confined. Their exhibition and deprivation of natural conditions constitute ongoing "takes" under the ESA, defined to include acts that "harass," "harm," or "wound" endangered species.

5. Response to Defendant's Claim Regarding Incarceration

18. Defendant implies that my incarceration negates my right to bring this action. That assertion has no legal basis. The ESA's citizen-suit provision extends to "any person," and incarceration does not extinguish my rights or my legal capacity to act.

19. I retain an active scientific and emotional interest in the welfare of these specific tigers, and my confinement does not sever the professional lineage or the data records I created.

20. Federal law guarantees access to courts for incarcerated individuals to vindicate statutory rights. My status as a prisoner does not diminish my ability to file or maintain this civil action.

6. Traceability and Redressability

21. My injuries are directly traceable to Defendant's conduct. Defendant's acts—sterilizing, exhibiting, and confining the four tigers—are the immediate cause of both my scientific and emotional harms.

22. Those injuries are redressable through injunctive relief. An order preventing Defendant from continuing to exhibit or further harm the animals, and requiring appropriate housing and care consistent with ESA standards, would alleviate the continuing injury to my interests and the genetic lineage I established.

7. Continuing ESA "Take" Violations

23. Defendant's argument that any alleged "take" is historical ignores that sterilization is an irreversible injury constituting a permanent and continuing violation.

24. Each day that these tigers remain sterilized and confined perpetuates the harm. Courts have held that ongoing captivity and mistreatment of endangered species constitute continuing "takes" actionable under the ESA.

25. Therefore, my claims are not time-barred or speculative; they challenge present, ongoing violations.

8. Service of Process

26. Defendant also asserts that service of process was defective because the summons was attached to its door. Service was executed at Defendant's registered business

address, **1426 W 300 N, Albion, Indiana**, as listed with the Indiana Secretary of State.

27. Defendant admits that it discovered and reviewed the Complaint, confirming actual notice.

28. Under both federal and Indiana law, service is sufficient if it is reasonably calculated to provide notice, and any technical defect is cured by actual notice. I acted in good faith to ensure proper service and promptly filed proof of service with the Court.

29. Defendant suffered no prejudice, and the Court may, in any event, permit re-service under Rule 4(m). Dismissal on this ground would elevate form over substance.

9. Policy and Equity Considerations

30. My purpose in filing this action is not personal gain but to enforce the ESA's core mission—to prevent extinction and mistreatment of protected species. Congress intended for citizens to serve as private attorneys general when institutions fail to act.

31. The ESA was designed to be liberally construed in favor of protection and enforcement. Allowing Defendant's technical arguments to block review would undermine that intent and allow continued harm to federally protected animals.

32. My work with these tigers was always directed toward preservation, education, and scientific understanding. Their continued mistreatment frustrates those purposes and devalues the genetic record contributed to ongoing research.

33. I respectfully ask the Court to view my declaration as both a factual statement of my personal and professional injuries and as confirmation that this suit falls squarely within the ESA's citizen-enforcement provisions.

11. Genetic Research and Conservation Significance

    34. Independent peer-reviewed and academic research corroborates the scientific legitimacy of the tiger breeding and genetic management efforts in which I participated. A 2013 undergraduate research thesis conducted at Texas A&M University by Sara E. Carney, under the supervision of Dr. Jan Janecka, titled *Genetic Diversity of White Tigers and Genetic Factors Related to Coat Color*, evaluated genetic heterozygosity and the molecular basis of the white phenotype in tigers. The study found **no statistically significant loss of genetic diversity in white tigers compared to orange tigers**, with mean heterozygosity values of 0.761 and 0.772 respectively.

    35. Carney's findings demonstrate that **white tigers are not inherently inbred**, and that **genetic diversity can be preserved** when breeding programs are scientifically managed. The research further found **no causal mutation** in the *MC1R* or *ASIP* genes, dispelling misconceptions that coat color directly causes congenital defects. Instead, the evidence indicates that deformities historically observed in captive white tigers arose from *breeding mismanagement*, not the genetic variant itself.

    36. These data reinforce that my own breeding practices—which emphasized lineage tracking, outcrossing to maintain heterozygosity, and collaboration with university researchers—were consistent with the scientific consensus on

responsible genetic management. The Defendant's subsequent sterilization of my tigers therefore eliminated animals that held verifiable research and conservation value, and destroyed living genetic material contributing to ongoing scientific work under the *Tiger Genome Diversity Project* and similar research programs.

37. The Carney (2013) study also complements peer-reviewed research published in *Current Biology* (Xu et al., 2013), which identified a specific amino-acid substitution (A477V in *SLC45A2*) responsible for the white coat phenotype. Together, these studies confirm that white tigers are a legitimate genetic variant of *Panthera tigris*, not a hybrid anomaly, and their conservation and scientific value warrant protection under the Endangered Species Act's humane and scientific-use provisions.

12. Continuing Professional and Legal Capacity Post-Release

38. My projected release date from federal custody is in early 2030. This upcoming release underscores the ongoing and redressable nature of my scientific and professional interests. Upon release, I intend to resume my work in captive breeding management, wildlife education, and genetic conservation—fields in which I have over sixteen years of experience and established research collaborations, including the Tiger Genome Diversity Project at Texas A&M University.

39. Defendant's continued possession and sterilization of my tigers directly interferes with my ability to reengage in lawful and scientifically legitimate conservation work once released. The sterilization of these animals has eliminated their reproductive potential and permanently extinguished a genetic line that forms part

of my documented research record. These harms are not hypothetical or historical—they are continuing and will materially affect my professional capacity and opportunities when I return to civilian life.

40. Because the Endangered Species Act recognizes both current and prospective injuries to scientific, aesthetic, and conservation interests, my pending release further strengthens—not weakens—my standing. Courts have consistently held that injuries remain redressable where future participation or observation of the affected species is reasonably certain. Here, the Defendant's ongoing exhibition and confinement practices ensure that the harm will persist beyond my term of incarceration and will continue to impair my research, collaboration, and conservation work upon release.

41. Accordingly, my imminent return to professional life in 2030 magnifies the urgency of relief. Restoring humane and lawful conditions for these animals and preventing further sterilization or exhibition will directly redress the injury to my personal and scientific interests, both now and upon reentry. The ESA's purpose—to empower citizens to serve as stewards and enforcers of species protection—was expressly designed to support plaintiffs such as myself, whose professional commitments and lifelong scientific investments will continue after release.

10. Conclusion

42. Based on the facts stated herein, I maintain that:

- I possess Article III standing through direct, personal, and continuing injury;
- My incarceration does not affect my capacity to sue under the ESA;

- Defendant's conduct constitutes ongoing "take" violations; and
- Service was properly accomplished or, at minimum, curable under applicable law.

43. For these reasons, I respectfully request that the Court deny Defendant's Motion to Dismiss in its entirety and allow this case to proceed on the merits.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on this 14th day of **November 2025**, Signed *Joseph A. Maldonado*

By and through Counsel,

*/s/ Roger I. Roots*