UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| JOSEPH MALDANADO, )<br>)<br>    Plaintiff, )<br>)<br>v. )<br>)<br>PROFESSIONAL ANIMAL )<br>RETIREMENT CENTER (PARC) a/k/a BLACK )<br>PINE ANIMAL SANCTUARY, )<br>)<br>    Defendant. ) | Case No. 1:25-cv-454 |

### DEFENDANT'S REPLY BRIEF IN SUPPORT OF
### MOTION TO DISMISS COMPLAINT

Defendant, Professional Animal Retirement Center, Inc. a/k/a Black Pine Animal Sanctuary, by counsel, submits its reply brief in support of its Motion to Dismiss the Complaint.

#### I.   PLAINTIFF LACKS STANDING

The Court should not be persuaded by Maldonado's characterization of the litany of cases upon which he relies in his response to the Motion to Dismiss.[1] The hallmarks of evaluating whether a plaintiff has suffered an injury in fact for standing to bring a claim under the ESA include personal observation of the animals in a distressed state and the intent to visit those animals in the future. Those hallmarks are missing for Maldonado.

In *Hill v. Coggins*, 867 F.3d 499, 502 (4th Cir. 2017), plaintiffs visited the zoo and personally observed the bears at issue. "Plaintiffs refuse to return to the Zoo while the bears are in their current living conditions, but they have expressed a desire to return if those conditions are improved." *Hill*, 867 F.3d at 503. "Plaintiffs' claim that the Zoo is depriving them of a right to personally observe the Zoo's bears living in a setting compatible with the ESA…." *Id.* at 505.

---

[1] Black Pine objects to pages 26-37 of Plaintiff's Response to Defendant's Motion to Dismiss as violative of Local Rule 7-1(e)(1).

"Plaintiffs … are willing and able to go back and visit the bears if the conditions that the bears live in are improved." *Id.* at 506.

In contrast, Maldonado has not personally observed the Big Cats at Black Pine, and he does not allege in his Complaint or aver in his Declaration that he intends to visit the Big Cats at Black Pine at any point in the future. Lacking these allegations, Maldonado fails to show an injury in fact.

In *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 181–82 (2000), the Court examined how an association's members were affected by concerns over water pollution from an industrial facility. Multiple association members testified that they lived near the affected river, they enjoyed using the river and its immediate surroundings prior to the presence of the industrial facility, and that they no longer enjoy and use the same area due to their observations of pollution and concern over pollutants. *See Laidlaw*, 528 U.S. at 181–82. Standing was derived from injury occasioned by physical proximity to the alleged violations of—in that case—the Clean Water Act.[2]

Importantly, the desire expressed by association members in *Laidlaw* to resume physical proximity to the affected river starkly contrasts with the absence of any intention by Maldonado to be in physical proximity of the Big Cats at any point in the future. Maldonado makes no assertion that he would enjoy visiting the Big Cats if only Black Pine cured its alleged violations of the ESA, and *Laidlaw* does not support Maldonado's arguments.

---

[2] Even the association member claiming economic harm connected that injury with the physical proximity of the member's home to the affected river, as the member claimed that pollution of the river had negatively affected the value of her home. *See Laidlaw*, 528 U.S. 167 at 182–83.

In *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228, 1236–37 (D.C. Cir. 1996), the Court of Appeals evaluated plaintiffs' ESA claims as follows:

> The closest they have come to asserting a concrete interest in the grizzly are expressions of members' desires to observe wildlife generally. In the absence of any reference to past (and anticipated future) enjoyment of the grizzly bear's presence, a mere expression of enjoyment of all things sylvan is inadequate to show a " 'directly' affected" interest with adequate specificity to survive dismissal on the pleadings, much less summary judgment.

Similarly, the absence of any reference in Maldonado's allegations and Declaration to past (and anticipated future) enjoyment of the Big Cats' presence at Black Pine should lead to the same conclusion that dismissal on the pleadings is appropriate here.

However, the plaintiffs in *Mountain States Legal* had an additional claim: "[t]he plaintiffs claim that the [federal government] implicitly designated the Upper Yaak as critical habitat for the grizzly bear, but without performing the economic analysis required by [the ESA]." *Mountain States Legal*, 92 F.3d at 1237. Reasoning that "private parties adversely affected by excessive agency zeal" should have recourse in court, the alleged failure to consider plaintiffs' economic interests prior to the designation of an area as a critical habitat was sufficient to establish plaintiffs' standing under the ESA. *Id.* In contrast, Maldonado does not rely on any provision of the ESA designed to protect his economic interests, and thus he cannot avail himself of the same basis for standing as the plaintiffs in *Mountain States Legal*.[3]

In *WildEarth Guardians v. United States Bureau of Land Mgmt.*, 870 F.3d 1222, 1226 (10th Cir. 2017), two organizations brought claims based on the Administrative Procedure Act and the National Environmental Policy Act. The plaintiffs established standing by presenting

---

[3] Similarly, Maldonado lacks a commercial interest analogous to the irrigation districts and ranchers in *Bennett v. Spear*, 520 U.S. 154, 168 (1997), who had standing to challenge an ESA violation that would reduce the amount of water available for them to use in commercial operations.

3

"declarations from individual members establishing harms to their personal aesthetic and recreational interests in the Thunder Basin National Grasslands, which would be adversely affected by the mining leases." *WildEarth*, 870 F.3d at 1231. The decision contains no discussion of the ESA, and no discussion of plaintiffs' interests in data, research, or observation. The decision lends no support to Maldonado's arguments.

Black Pine is not interfering with any documentation and data already obtained by Maldonado, including documentation of phenotypic records, lineage tracking, reproductive data, *etc*. To the extent Maldonado complains that he will be unable to generate new reproductive data and collect genetic samples, that alleged injury is not fairly traceable to Black Pine because Maldonado lost any ability to make breeding decisions for the Big Cats or gather physical samples when federal authorities seized the Big Cats. (ECF 17-1 at 3). Maldonado's suggestion that he will be lacking in photographic documentation or behavioral observations is belied by the absence of any intent by Maldonado to visit the Big Cats at Black Pine in the future.

Maldonado inaptly cites *Am. Soc'y For Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334 (D.C. Cir. 2003) for the proposition that "conservation and scientific professionals have standing when mistreatment of animals disrupts their work." (ECF No. 17 at 15). The plaintiff in that case, who showed an injury in fact, "says he became attached to the elephants when he worked with them and would like to 'visit' them again 'so that he can continue his personal relationship with them, and enjoy observing them.'" *Am. Soc'y For Prevention of Cruelty to Animals*, 317 F.3d at 337. The Court of Appeals drew a contrast with another of its decisions in which the plaintiff "did not assert an intent to return to the zoo to observe elephants and thus had not alleged an imminent injury." *Id.* at 338. Commenting on another of its decisions, the Court of Appeals "expressed doubt whether a

4

plaintiff had alleged an injury in fact based on her lost opportunity to study Asian elephants…" and "noted that removing one of the Asian elephants did not appear to threaten the plaintiff's opportunity to observe the species because three others were still at the zoo." *Id.* at 337-38.

Lacking any intention to visit the Big Cats in the future, Maldonado differs substantially from the plaintiff in *Am. Soc'y For Prevention of Cruelty to Animals* and fails to show an injury in fact. Moreover, Maldonado's generalized loss of an opportunity to study the Big Cats would not persuade the Court of Appeals for the District of Columbia Circuit that Maldonado has standing, and those assertions should not persuade this Court, either.

Maldonado argues that *Japan Whaling Ass'n v. Am. Cetacean Soc.*, 478 U.S. 221, 230 n.4 (1986) explicitly recognized "aesthetic and emotional attachment to identifiable animals as a concrete personal injury." (ECF No. 17 at 13). This argument is derived from a single sentence in a footnote observing that "the whale watching and studying of their members will be adversely affected by continued whale harvesting…." *Japan Whaling Ass'n*, 478 U.S. at 230 n.4. Whale watching, however, involves a degree of physical proximity that is missing from the harm alleged by Maldonado, in which he is upset by envisioning the Big Cats in an environment that Maldonado believes is harmful, although it is an environment that Maldonado has never visited and never intends to visit.

Maldonado's reference to *Strahan v. Coxe* is unavailing. In contrast to Maldonado, "Strahan testified that he engages in personal observation of whales, from the coast and, 'as many as four to five times' per year, from whale watch boats." *Strahan v. Coxe*, 939 F. Supp. 963, 977 (D. Mass. 1996), *aff'd in part and vacated in part*, 127 F.3d 155 (1st Cir. 1997). The court in *Strahan* recognized that "[r]egular observation of endangered whales in Massachusetts waters is a cognizable interest for standing purposes." *Id.* at 978. Maldonado has not visited the

5

Big Cats at Black Pine and has no intention of doing so in the future. *Strahan* should not apply here because Maldonado lacks the personal observation that was present in *Strahan*.

Maldonado's reliance on *People for Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Maryland, Inc.*, 843 Fed. Appx. 493, 497 (4th Cir. 2021) is misplaced. There, the Court of Appeals reviewed only the organizational standing of PETA in its own right and not as a representative of its members who have been harmed. *See Tri-State Zoological*, 843 Fed. Appx. at 495. In that case, "no individual person-plaintiffs alleged or proved an aesthetic injury." *Id*. at 497. Maldonado is not an organization, and his standing should be determined by the analysis applicable to individual persons.

In *People for Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 879 F.3d 1142, 1146 n.5 (11th Cir.), *adhered to on denial of reh'g sub nom. People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 905 F.3d 1307 (11th Cir. 2018), the Court of Appeals summarily affirmed the district court's determination that the plaintiffs had standing, without further explanation. The decision contains no reference to a plaintiff's personal, aesthetic, scientific, or emotional interests in the subject animal, and it lends no authority to Maldonado's arguments.

In *Fed. Election Comm'n v. Akins*, 524 U.S. 11, 21 (1998), the plaintiffs showed an injury in fact based on "their inability to obtain information—lists of AIPAC donors (who are, according to AIPAC, its members), and campaign-related contributions and expenditures—that, on respondents' view of the law, the statute requires that AIPAC make public." *Akins*, 524 U.S. at 21. This conclusion supports the unremarkable proposition that "a plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *Id*. *Akins* does not mention any public disclosure requirements imposed by the ESA.

6

Maldonado's claims do not align with those in *Akins*. Maldonado seeks to enforce the ESA's prohibition against a "take" of the Big Cats. He does not assert that the ESA compels the disclosure of any information to which he has been denied access. Thus, *Akins* offers no guidance pertaining to Maldonado's standing.[4]

## II.    MALDONADO FAILED TO SERVE PROCESS ON BLACK PINE

Maldonado makes no discernible effort to distinguish the authority relied upon by Black Pine in support of its Motion to Dismiss. Black Pine need not repeat those arguments here.

Maldonado's reliance on *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381, 383 (7th Cir. 1998) is inexplicable because the Court of Appeals in that case affirmed a dismissal based on Rule 12(b)(5).

## III.    CONCLUSION

For the foregoing reasons, the Court should dismiss this action for lack of subject matter jurisdiction and lack of personal jurisdiction over Defendant.

Respectfully Submitted,

*/s/ Bradley D. Hasler*
Bradley D. Hasler, #22384-49
Dentons Bingham Greenebaum LLP
2700 Market Tower
10 West Market Street
Indianapolis, Indiana 46204
Telephone:    (317) 686-5240
Facsimile:    (317) 236-9907
Email: bradley.hasler@dentons.com

*Attorney for Defendant, Professional Animal Retirement Center (PARC) a/k/a Black Pine Animal Sanctuary*

---

[4] *In Def. of Animals v. Nat'l Institutes of Health*, 543 F. Supp. 2d 70 (D.D.C. 2008) involves a request under the Freedom of Information Act and contains no discussion of the ESA or standing. It offers no support for Maldonado's arguments.

7