IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

JOSEPH MALDONADO

*Plaintiff*,

v.

PROFESSIONAL ANIMAL
RETIREMENT CENTER (PARC), aka
BLACK PINE ANIMAL SANCTUARY,

Case: 1:25-cv-454

**PLAINTIFF'S MOTION TO FILE SURREPLY**

Plaintiff Joseph Maldonado ("Plaintiff"), by and through undersigned counsel, respectfully moves for leave to file a short surreply in opposition to Defendant Professional Animal Retirement Center, Inc. a/k/a Black Pine Animal Sanctuary's ("Black Pine" or "Defendant") Motion to Dismiss the Complaint. In support of this motion, Plaintiff states as follows:

**I. LEGAL STANDARD**

1.      Neither the Federal Rules of Civil Procedure nor the Local Rules expressly provide for surreplies; rather, the Local Rules contemplate a motion, a response, and a reply. N.D. Ind. L.R. 7-1(d). Supporting and response briefs ordinarily may not exceed 25 pages and reply briefs may not exceed 15 pages. N.D. Ind. L.R. 7-1(e)(1).

2.      Courts in this District therefore "generally do[] not permit litigants to file a surreply brief," but recognize a narrow exception where a reply raises new issues, arguments, or authorities. *See, e.g., Lafayette Life Ins. Co. v. City of Menasha, Wis.*, No. 4:09-CV-64, 2010 WL

– 1 –

4553667, at *1 (N.D. Ind. Nov. 3, 2010) (Local Rule 7-1 "does not contemplate the filing of a surreply or response to the reply brief"); *Hall v. Forest River, Inc.*, No. 3:04-CV-259-RM, 2008 WL 1774216, at *1 n.1 (N.D. Ind. Apr. 15, 2008).

3.     Consistent with Seventh Circuit guidance, "[t]he decision to permit the filing of a surreply is purely discretionary and should generally be allowed only for valid reasons, such as when the movant raises new arguments in a reply brief." *Meraz–Camacho v. United States*, 417 F. App'x 558, 559 (7th Cir. 2011). Courts in this District have granted leave to file surreplies under that narrow exception where a reply brief injects new arguments or legal developments. *See, e.g., Polycon Indus., Inc. v. R & B Plastics Mach., LLC*, No. 2:19-CV-485, 2024 WL 7335074, at *1–2 (N.D. Ind. Dec. 23, 2024).

4.     Here, Defendant's Reply Brief in Support of Motion to Dismiss (ECF No. 18) introduces new cases, new legal theories regarding standing, and new contentions regarding Plaintiff's evidence and the page length of his opposition that were not presented in the opening brief. A limited surreply confined to these new matters will assist the Court and ensure Plaintiff is not prejudiced.

## II. GROUNDS FOR RELIEF

### A.  Defendant's Reply Raises New Legal Theories and Authorities on Standing

5.     Defendant's opening memorandum argued in general terms that Plaintiff lacks standing because he has not personally visited Black Pine and allegedly has no intent to do so in the future.

6.     In its reply, however, Defendant substantially reframes the standing analysis and relies on a series of new authorities—many from other circuits—for the first time to advance

narrow and categorical theories that were not presented in its opening brief. These include, among others:

- Hill v. Coggins, 867 F.3d 499 (4th Cir. 2017);
- Mountain States Legal Found. v. Glickman, 92 F.3d 1228 (D.C. Cir. 1996);
- WildEarth Guardians v. U.S. Bureau of Land Mgmt., 870 F.3d 1222 (10th Cir. 2017);
- Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus, 317 F.3d 334 (D.C. Cir. 2003);
- Japan Whaling Ass'n v. Am. Cetacean Soc., 478 U.S. 221 (1986);
- Strahan v. Coxe, 939 F. Supp. 963 (D. Mass. 1996), aff'd in part, 127 F.3d 155 (1st Cir. 1997);
- People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Maryland, Inc., 843 F. App'x 493 (4th Cir. 2021);
- People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium, 879 F.3d 1142 (11th Cir. 2018);
- Fed. Election Comm'n v. Akins, 524 U.S. 11 (1998);
- Def. of Animals v. Nat'l Insts. of Health, 543 F. Supp. 2d 70 (D.D.C. 2008).

7.    Defendant deploys this new line of authorities to advance novel propositions not pressed in its opening brief, including, inter alia, that:

(a) ESA "aesthetic" standing supposedly requires not only past personal observation of the particular animals at issue but also an expressed intent to visit those same animals in the future, and that any other form of concrete aesthetic, emotional, scientific, or professional harm is categorically insufficient;

(b) Plaintiff's ongoing injuries tied to his conservation and breeding program, professional interests, and emotional attachment to the Big Cats cannot support ESA standing because—Defendant now argues—those harms are either too "generalized" or not fairly traceable to PARC; and

(c) ESA citizen suits do not encompass professional, research, or informational

injuries, which Defendant attempts to recast through cases addressing entirely different statutory schemes and disclosure provisions.

8.     These newly articulated theories and authorities go well beyond the scope of Defendant's original standing argument and directly attack Plaintiff's sworn declaration and standing authorities. Plaintiff has had no prior opportunity to address these new authorities, explain why they are distinguishable, and demonstrate that his alleged aesthetic, professional, and conservation injuries satisfy Article III and the ESA's zone-of-interests requirements.

9.     A short surreply focused on these new standing authorities and theories will assist the Court by clarifying the limited holdings of the newly cited decisions and explaining why they do not foreclose standing on the facts of this case.

### B.  The Reply Introduces New Causation and Traceability Arguments Regarding Plaintiff's Professional and Scientific Injuries

10.     Defendant also advances, for the first time in its reply, a new causal-nexus argument: that any injury relating to the inability to gather new breeding, genetic, and behavioral data from the Big Cats is not fairly traceable to PARC because, Defendant asserts, "Maldonado lost any ability to make breeding decisions for the Big Cats or gather physical samples when federal authorities seized the Big Cats."

11.     This traceability theory was not developed in the opening brief. Plaintiff's Complaint and declaration explain that his injuries are ongoing and stem from PARC's current possession and treatment of his former Big Cats—through neutering, exhibition, and housing conditions that interfere with his long-term conservation and breeding work, destroy future reproductive opportunities, and undermine the scientific value of existing data and lineages. Plaintiff has not yet had a chance to address Defendant's new assertion that causation is broken as a matter of law by the initial government seizure.

12. Plaintiff's proposed surreply will succinctly address this new causation theory and explain why the continuing "take" alleged under the ESA is fairly traceable to PARC's ongoing conduct, not extinguished by the government's prior seizure.

### C. The Reply Injects New Issues Concerning Alleged Page-Limit Violations and an Embedded Request to Strike Portions of Plaintiff's Response

13. In footnote 1 of its reply, Defendant "objects to pages 26–37 of Plaintiff's Response to Defendant's Motion to Dismiss as violative of Local Rule 7-1(e)(1)." This is effectively a new request that the Court strike or disregard a substantial portion of Plaintiff's response brief based on page limits.

14. Defendant did not raise any page-limit objection in its opening motion or in a separate motion to strike. Plaintiff therefore has not had an opportunity to respond and show, for example, that:

> (a) the challenged pages are within the 25-page cap once tables and appendices are excluded, as Local Rule 7-1(e)(1) expressly directs; or
> (b) to the extent the Court views the response as technically overlength, the Court has discretion under Local Rule 7-1(e)(2) to accept it "for extraordinary and compelling reasons," which are present here given the number of ESA standing and jurisdictional issues joined in a single Rule 12 motion.

15. A limited surreply is the most efficient way to address this new objection without burdening the Court with separate motion practice over page limits.

### D. The Reply Raises New Arguments Concerning Service and Rule 12(b)(5)

16. Finally, in the section addressing service of process, Defendant's reply states that "Black Pine need not repeat" its prior arguments and asserts that Plaintiff's reliance on *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381 (7th Cir. 1998), is "inexplicable" because the Seventh Circuit affirmed dismissal under Rule 12(b)(5).

17. Defendant's opening brief did not grapple with the aspects of Troxell and related authority that support discretionary extensions or curing technical defects in service where a

defendant has actual notice and no prejudice. The reply's new characterization of Troxell, and its suggestion that dismissal is mandatory rather than discretionary warrants a short response so that the Court has both sides of the issue before it.

18.    Plaintiff's proposed surreply will address this narrow service question, focusing on why Rule 4(m) and Troxell support an extension or other curative relief if the Court concludes there was any technical deficiency.

### III. SCOPE OF THE PROPOSED SURREPLY

19.    Plaintiff's proposed surreply, attached as Exhibit A, is narrowly tailored. It:

(a) addresses only arguments, authorities, and objections first raised in Defendant's reply brief;
(b) clarifies the holdings and relevance of the newly cited standing cases;
(c) responds to Defendant's new traceability argument regarding Plaintiff's professional and scientific injuries;
(d) addresses Defendant's page-limit objection and explains why the Court may consider the entirety of Plaintiff's response under Local Rule 7-1(e); and
(e) briefly addresses the new characterization of Troxell and Rule 12(b)(5).

20.    The surreply does not repeat Plaintiff's prior arguments, is limited in length, and is offered solely to ensure a complete and accurate record on issues raised for the first time in Defendant's reply.

### IV. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant this Motion for Leave to File Surreply and permit the filing of the surreply attached hereto as Exhibit A, and grant such other and further relief as the Court deems just and proper.

Date: November__, 2025                    Respectfully submitted,


                                          /s/ Roger Roots
                                          Roots Justice
                                          10 Dorrance Street
                                          Suite 700
                                          Providence, Rhode Island 02903
                                          (662) 665-1061

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| JOSEPH MALDONADO<br><br>*Plaintiff,*<br><br>v.<br><br>PROFESSIONAL ANIMAL RETIREMENT CENTER (PARC), aka BLACK PINE ANIMAL SANCTUARY, | Case: 1:25-cv-239-HAB |

**PLAINTIFF'S SURREPLY IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Plaintiff Joseph Maldonado ("Maldonado" or "Plaintiff"), by counsel, submits this surreply in opposition to Defendant Professional Animal Retirement Center, Inc. a/k/a Black Pine Animal Sanctuary's ("Black Pine" or "Defendant") Motion to Dismiss the Complaint. This surreply is narrowly tailored to address (1) new cases and legal theories raised for the first time in Defendant's Reply Brief (ECF No. 18); (2) Defendant's new traceability argument; (3) the new page-limit objection; and (4) Defendant's new characterization of *Troxell v. Fedders of N. Am., Inc.*, 160 F.3d 381 (7th Cir. 1998).

**I. INTRODUCTION**

In its reply, Black Pine recasts the standing inquiry into a rigid, two-part requirement: that a plaintiff personally visit the animals at issue and profess a desire to return to visit those same animals in the future. ECF No. 18 at 1–3. It assembles a new set of authorities—many from other circuits and under other statutes—and argues they collectively require dismissal because

Plaintiff has not physically visited Black Pine himself and did not recite magic words of intent to return.

This is not the law. ESA standing has never been limited to plaintiffs who personally stand in front of the animals in real time. It encompasses aesthetic, emotional, scientific, and professional injuries, including harms to one's ability to observe and study animals over time, to collect and preserve data, and to engage in conservation work. It also recognizes that a plaintiff can experience those injuries through agents, researchers, and collaborators who act on his behalf.

In all events, Defendant's predicate factual premise is wrong. As explained in the Supplemental Declaration of Joseph Maldonado, filed contemporaneously with this surreply, Maldonado has arranged and paid for agents acting on his behalf to visit Black Pine to observe, document, and photograph the Big Cats. Those agents obtained admission to Black Pine in Maldonado's name and at his direction, and they generated photographic documentation of the Big Cats' conditions that Maldonado uses in his ongoing conservation and professional work. See Supp. Decl. of J. Maldonado ¶¶ 2–6 & Exs. 1–3 (Black Pine receipt reflecting paid admission for Maldonado's agents; photographs of the Big Cats at Black Pine). He intends to continue using agents in this manner, given his own constraints on travel and physical presence.

The new authorities cited in Defendant's reply do not foreclose standing on these facts. Nor does the government's prior seizure of the Big Cats break the causal chain between Black Pine's ongoing "take" and Maldonado's continuing injuries. Finally, Defendant's page-limit objection and renewed Rule 12(b)(5) argument do not provide an alternative basis for dismissal.

## II. ARGUMENT

### A. Defendant's New Standing Authorities Do Not Foreclose Plaintiff's Aesthetic, Emotional, and Professional Injuries

### 1. Hill, Laidlaw, and Mountain States do not require personal, in-person visits by Maldonado himself.

In its reply, *Black Pine leans heavily on Hill v. Coggins*, 867 F.3d 499 (4th Cir. 2017), *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs*. (TOC), Inc., 528 U.S. 167 (2000), and *Mountain States Legal Found. v. Glickman*, 92 F.3d 1228 (D.C. Cir. 1996), to argue that "the hallmarks of"ESA standing are (1) a plaintiff's personal observation of the animals in a distressed state and (2) an expressed intent to return to see them in the future. ECF No. 18 at 1–3. But those decisions stand for a more basic point: that Article III requires concrete, particularized injury—not that standing is limited to one narrow form of injury.

Hill and Laidlaw are examples, not boundary lines. In both cases, the plaintiffs had concrete interactions with the affected environmental resource and alleged that the defendant's conduct diminished their ability to enjoy that resource. *Hill*, 867 F.3d at 503–06 (plaintiffs' enjoyment of bears at zoo impaired by ESA-violative conditions); Laidlaw, 528 U.S. at 181–83 (association members' use and enjoyment of river impaired by unlawful discharges). The courts found standing because the plaintiffs had a personal stake—not because standing requires in-person visits by the plaintiff in every case, to the exclusion of other types of concrete, aesthetic, and professional injuries.

Mountain States similarly underscores that a plaintiff must do more than profess a vague "enjoyment of all things sylvan." 92 F.3d at 1236–37. It does not hold that only in-person wildlife viewing can support standing. Nor does it address the scenario presented here, where a plaintiff's direct conservation, breeding, and data-collection efforts are impaired by a facility's ongoing treatment of specific animals that were previously in his care.

Here, Maldonado has alleged and sworn to concrete, particularized injuries that are at least as substantial as those in the cases Defendant cites:

- **Aesthetic and emotional injuries.** Maldonado bred, raised, and worked closely with the Big Cats for years. Seeing and learning of them being neutered, confined, and exhibited in a manner he believes violates the ESA causes concrete emotional and aesthetic harm, rooted in his long-standing relationship with these particular animals and his conservation work.
- **Professional and scientific injuries.** Maldonado has invested significant time and resources into building a breeding program, lineage records, phenotypic documentation, and behavioral observations for the Big Cats. Black Pine's ongoing treatment of the Big Cats undermines the scientific value of those records, forecloses future breeding options, and impairs his ability to maintain and expand his professional work.
- **Continuing observational injuries through agents.** Because Maldonado cannot personally visit Black Pine, he has retained and directed agents to visit the facility on his behalf to document and photograph the Big Cats' conditions. He pays for their admission, receives the resulting documentation, and uses it in his conservation and professional efforts. Supp. Decl. ¶¶ 2–6 & Exs. 1–3. These visits are concrete manifestations of his ongoing desire to observe and monitor the Big Cats' welfare and to use that observation in furtherance of his work.

Defendant's reply simply ignores this dimension of the standing inquiry. Nothing in Hill, Laidlaw, or Mountain States suggests that a plaintiff must personally stand at the zoo gate, as opposed to acting through agents, to suffer a cognizable aesthetic or professional injury. Nor do those cases hold that a plaintiff with a deep, pre-existing relationship to specific animals (and an ongoing conservation program) has no standing unless he utters particular "magic words" about future in-person visits in his initial declaration.

The Supplemental Declaration makes explicit what was implicit in Maldonado's prior filings: he has an ongoing, concrete interest in the Big Cats' welfare, and he is actively pursuing that interest—through agents, data, and documentation—despite his own physical constraints.

**2.    Defendant's other new authorities are distinguishable and do not bar the injuries Maldonado alleges.**

Defendant also invokes new authorities like *WildEarth Guardians v. United States Bureau of Land Mgmt.*, 870 F.3d 1222 (10th Cir. 2017), *Am. Soc'y for Prevention of Cruelty to Animals v. Ringling Bros. & Barnum & Bailey Circus*, 317 F.3d 334 (D.C. Cir. 2003), *People for the Ethical Treatment of Animals, Inc. v. Tri-State Zoological Park of W. Maryland, Inc.*, 843 F. App'x 493 (4th Cir. 2021), *People for the Ethical Treatment of Animals, Inc. v. Miami Seaquarium*, 879 F.3d 1142 (11th Cir. 2018), *Fed. Election Comm'n v. Akins*, 524 U.S. 11 (1998), and *Def. of Animals v. Nat'l Institutes of Health*, 543 F. Supp. 2d 70 (D.D.C. 2008). ECF No. 18 at 3–7. None of these decisions holds that a plaintiff in Maldonado's position lacks standing.

- **WildEarth Guardians.** WildEarth involved APA and NEPA claims about mining leases and focused on organizational standing based on members' use and enjoyment of a national grassland. 870 F.3d at 1230–32. The case did not address the ESA citizen-suit context, nor did it purport to exhaust the forms of concrete injury that can support standing in conservation cases. It certainly did not hold that professional, research, or data-integrity injuries are categorically insufficient.

- **ASPCA v. Ringling Bros.** Ringling Bros. concerned organizational standing and Article III limits on claims asserted by an association whose alleged injuries were tied to a paid witness and litigation funding. 317 F.3d at 336–41. Maldonado is not an organization, and his injuries do not depend on manufactured litigation tactics. His injuries arise from the long-term treatment of specific Big Cats whose lives and genetic lines are intertwined with his conservation work.

- **Tri-State Zoological and Miami Seaquarium.** Defendant uses these cases to suggest that ESA standing is limited or disfavored, but neither decision addresses an individual conservationist-plaintiff with Maldonado's profile, nor the use of agents to observe animals on a plaintiff's behalf. To the extent those cases involve organizational standing or summary affirmances without detailed standing analysis, they do not govern this case.

- **Akins and Def. of Animals v. NIH.** Akins and Def. of Animals are information-injury and FOIA cases. They explain when denial of information that must be publicly disclosed by statute can constitute an Article III injury. They do not purport to speak to ESA standing in the context of ongoing "take" and aesthetic, emotional, and professional harms to a conservationist who worked directly with the animals at issue.

In sum, the new authorities Defendant cites show that (1) Article III requires a concrete

injury and (2) organizational and information-based standing have their own limits. They do not erase the long line of cases recognizing standing where mistreatment of specific animals interferes with a plaintiff's conservation, professional, research, or aesthetic interests.

Here, Maldonado's injuries are exactly the type the ESA's citizen-suit provision is meant to vindicate: harms to a conservationist and breeder whose work, data, and emotional connection to specific animals are undermined by ongoing "take." The fact that he experiences some of those harms through agents and photographic documentation rather than standing at the enclosure fence himself does not deprive him of standing.

### B. Defendant's New Traceability Argument Fails: Black Pine's Ongoing ESA Violations Are a Proximate Cause of Maldonado's Injuries

Defendant's reply advances a new traceability argument: that any injury relating to future reproductive data, genetic samples, or behavioral observations is not fairly traceable to Black Pine because "Maldonado lost any ability to make breeding decisions for the Big Cats or gather physical samples when federal authorities seized the Big Cats." ECF No. 18 at 3–4.

That framing is incorrect for at least three reasons.

First, Maldonado's injuries are not limited to the government's seizure. The Complaint and declaration allege that Black Pine's **ongoing** conduct—neutering the Big Cats, housing them in conditions incompatible with their health and welfare, and exhibiting them in violation of the ESA—constitutes a continuing "take." Those actions eliminate future breeding possibilities, distort or destroy the conservation value of existing genetic lines, and undermine the reliability and completeness of Maldonado's historic data. Even if the initial seizure cut off certain options, Black Pine's subsequent decisions about neutering, housing, and care are independent and continuing causes of Maldonado's current injuries.

Second, the government's seizure is **not** an intervening cause that breaks the causal

chain. The seizure did not require Black Pine to neuter the Big Cats, house them in any particular way, or exhibit them under conditions that allegedly violate the ESA. Those are Black Pine's choices. When a defendant independently chooses to engage in allegedly unlawful treatment of animals, it remains a proximate cause of any resulting harm to a plaintiff's conservation, data, and professional interests.

Third, Maldonado's use of agents to document the Big Cats at Black Pine underscores that his injuries are ongoing and tied to Black Pine's current conduct, not frozen at the moment of seizure. He continues to receive new information and photographic evidence concerning the Big Cats' conditions, and he continues to experience emotional and professional harm as Black Pine's treatment of the Big Cats unfolds. Supp. Decl. ¶¶ 2–6 & Exs. 1–3.

Article III requires only that Plaintiff's injuries be "fairly traceable" to the challenged conduct—not that the challenged conduct be the first event in the causal chain or the only possible cause. On these facts, Maldonado's aesthetic, emotional, and professional injuries are fairly traceable to Black Pine's ongoing ESA-violative treatment of the Big Cats.

## C. Defendant's New Page-Limit Objection Provides No Basis to Strike or Disregard Plaintiff's Response

In a footnote, Defendant "objects to pages 26–37 of Plaintiff's Response to Defendant's Motion to Dismiss as violative of Local Rule 7-1(e)(1)." ECF No. 18 at 1 n.1. This is effectively a new request that the Court strike or disregard nearly half of Plaintiff's response brief.

The objection lacks merit. Local Rule 7-1(e)(1) sets a 25-page limit but excludes certain items from that count, such as tables and related content. Plaintiff's response was prepared in good faith to comply with those requirements while addressing the numerous jurisdictional, standing, and service issues raised in a single Rule 12 motion. To the extent the Court concludes that any section technically exceeds the limit, Local Rule 7-1(e)(2) expressly authorizes the

Court to accept an overlength brief "for extraordinary and compelling reasons." The complexity and importance of the issues here—including questions of ESA standing, jurisdiction, and citizen-suit enforcement—as well as the absence of any prejudice to Defendant, supply those reasons.

Moreover, Defendant has suffered no prejudice from the challenged pages. It was able to file a reply that fully addressed Plaintiff's arguments in seven pages. ECF No. 18. Striking or ignoring portions of Plaintiff's response would serve only to obscure the issues before the Court.

For these reasons, the Court should overrule Defendant's belated page-limit objection and consider the response brief in its entirety.

### D. Defendant's New Characterization of Troxell Does Not Compel Dismissal Under Rule 12(b)(5)

Finally, Defendant's reply reasserts its service argument and contends that Plaintiff's reliance on Troxell v. Fedders of N. Am., Inc., 160 F.3d 381 (7th Cir. 1998), is "inexplicable" because Troxell affirmed a dismissal for lack of proper service. ECF No. 18 at 6–7.

But Troxell is significant here not because the court ultimately affirmed dismissal on its specific facts, but because it underscores that **Rule 4(m) affords district courts discretion** to extend the time for service—even absent good cause—where circumstances warrant and where the defendant has actual notice. Troxell, 160 F.3d at 383–85. The case confirms that dismissal is not automatic; rather, the court must consider whether an extension or other curative relief is appropriate.

Here, even assuming for the sake of argument that some technical defect in service occurred, Black Pine:

- has long had actual notice of the lawsuit;
- is represented by counsel who has appeared and fully litigated a motion to dismiss on both jurisdictional and merits grounds; and
- has not identified any concrete prejudice attributable to the manner or timing of service.

Under these circumstances, Rule 4(m) and the principles reflected in Troxell support granting an extension or deeming service effective rather than dismissing the case. Dismissal would elevate form over substance in a case that raises significant ESA enforcement issues and where Defendant has been able to participate fully in the litigation from the outset.

### III. CONCLUSION

For the foregoing reasons, and for those stated in Plaintiff's prior filings, the Court should:

(1)   reject Defendant's new standing, traceability, page-limit, and service arguments;

(2)   deny Defendant's Motion to Dismiss in its entirety; and

(3)   grant such other and further relief as the Court deems just and proper.

Date: November 25, 2025

Respectfully submitted,

/s/ Roger Roots
Roots Justice
10 Dorrance Street
Suite 700
Providence, Rhode Island 02903
(662) 665-1061

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF INDIANA

JOSEPH MALDONADO

*Plaintiff,*

v.

PROFESSIONAL ANIMAL
RETIREMENT CENTER (PARC), aka
BLACK PINE ANIMAL SANCTUARY,

Case: 1:25-cv-239-HAB

**SUPPLEMENTAL DECLARATION OF PLAINTIFF JOSEPH MALDONADO
IN SUPPORT OF STANDING AND IN OPPOSITION TO MOTION TO DISMISS**

I, Joseph Maldonado, pursuant to 28 U.S.C. § 1746, hereby declare under penalty of perjury that the following is true and correct to the best of my knowledge and belief:

1.      I am the Plaintiff in this action. I make this supplemental declaration in support of my standing to bring this suit and in opposition to Defendant's Motion to Dismiss. I have personal knowledge of the matters stated herein.

2.      I have spent many years breeding, caring for, and working closely with Big Cats ("Big Cats"), including the tigers and other animals that are the subject of this lawsuit. Before their transfer to Professional Animal Retirement Center a/k/a Black Pine Animal Sanctuary ("Black Pine" or "PARC"), I bred and raised several of the Big Cats now housed there and maintained records and data related to their lineage, health, and behavior.

3.      Because of my current confinement and related restrictions on my movement and travel, I am not able to personally visit Black Pine in Indiana to observe the Big Cats. This

– 17 –

limitation is not due to lack of desire on my part. If I were able to travel freely, I would personally visit Black Pine to see the Big Cats that were in my care and to assess their conditions.

4.    In order to continue monitoring the Big Cats and to maintain my connection to my conservation and breeding work, I have arranged for agents to visit Black Pine on my behalf. By "agents," I mean individuals I have personally directed and authorized to go to Black Pine in my place, using funds I provide, for the specific purpose of observing and documenting the Big Cats that were formerly in my care.

5.    On or about June 1, I directed my agents to visit Black Pine on my behalf. I instructed them to pay for admission, identify and locate the Big Cats that originated from my facility, observe their conditions, and take photographs and notes documenting what they saw.

6.    I paid for their admission to Black Pine. Attached as Exhibit 12 to this declaration is a true and correct copy of a receipt from Black Pine reflecting the paid admission for the agents I sent on my behalf.

7.    During their visit, my agents observed Big Cats that were previously in my care. They reported to me, and I understand, that these animals are being kept, exhibited, and/or housed under the conditions described in my Complaint, including being neutered and kept in enclosures and circumstances that I believe violate the Endangered Species Act ("ESA").

8.    My agents took photographs of the Big Cats and their conditions during this visit. Attached as Exhibits 1 through 11 are true and correct copies of some of the photographs taken during that visit. These photographs were obtained at my direction and for my benefit, and they document the animals' appearance, enclosures, and other conditions.

9. I use the information and photographs my agents obtain from Black Pine in several ways:

    a. To continue my personal and professional work documenting the Big Cats' physical condition, behavior, and lineage;

    b. To assess and understand how Black Pine's treatment, housing, and neutering decisions affect the Big Cats' welfare, future breeding potential, and conservation value;

    c. To maintain my connection to these specific animals that I bred and raised and to monitor the impact of Black Pine's actions on them over time; and

    d. To inform my ongoing advocacy and conservation efforts, including my decision to bring this lawsuit.

10. I continue to experience emotional and aesthetic harm when I receive reports and Photographs as well as the constant social media posts featuring both videos and photographs posted by Defendants, showing the Big Cats in conditions that I believe violate the ESA and undermine the breeding and conservation work I did with them. Knowing that animals I bred and cared for are being neutered, housed, and exhibited in this manner causes me concrete distress and diminishes my ability to take satisfaction in my past and ongoing conservation work.

11. I also suffer professional and scientific harm from Black Pine's ongoing treatment of the Big Cats. Neutering these animals and keeping them under conditions that I believe are harmful or substandard interferes with the breeding plans I had for them, impairs the value and integrity of the genetic lines and data I developed, and prevents the collection of future observations and samples that would otherwise have been available for my work.

12. Because I cannot personally travel to Black Pine, I intend, subject to my resources and circumstances, to continue sending agents to visit the facility on my behalf to observe and document the Big Cats' conditions, until my release from prison, after which I will be able to do so myself. I continue to have a strong, personal interest in these specific

animals and in ensuring that their treatment complies with the ESA.

13.    My injuries from Black Pine's ongoing conduct are not historical or abstract. They are continuing and concrete: I continue to receive and review new information and photographic documentation from my agents' visits, as well as the constant social media posts featuring both videos and photographs posted by Defendants, and each time I do, I experience renewed emotional, aesthetic, and professional harm as I see how the Big Cats are being kept and treated.

14.    I submit this supplemental declaration to clarify and make explicit that, even though I cannot personally visit Black Pine at this time, I am actively and concretely observing the Big Cats through my agents, intend to continue my relationship with these cats upon my future release, and I am directly affected by Black Pine's ongoing conduct toward the animals I bred and raised.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 25, 2025, at my direction, by counsel.


*/s/ Joseph Maldonado*

JOSEPH MALDONADO

# EXHIBITS 1-12

















