**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

JOSEPH MALDONADO,

　　　　Plaintiff,

　　　　v.　　　　　　　　　　　　　　　　CASE NO. 1:25-CV-454-HAB-ALT

PROFESSIONAL ANIMAL RETIREMENT
CENTER,

　　　　Defendant.

**OPINION AND ORDER**

"Are the animals happy? Who the hell knows?" Certainly not Plaintiff Joseph Maldonado, who uttered those words in a 2020 Netflix documentary[1] and who is now suing the wildlife park housing some of his former tigers under the citizen suit provision of the Endangered Species Act, 16 U.S.C. § 1540(g) ("ESA"). But Maldonado has no connection to these big cats beyond his personal history with them, nor has he ever visited the park. And though he claims he has had "agents" visit the tigers on his behalf, he himself is federally incarcerated and cannot view them in person until his release.

Maldonado filed his Complaint on August 29, 2025, alleging that Defendant Professional Animal Retirement Center ("PARC" or "Black Pine"), a/k/a Black Pine Animal Sanctuary, has "wounded," "harmed," and "harassed" four tigers formerly owned by Maldonado by (1) having them spayed or neutered; (2) forcing them into public observation; and (3) confining them in "woefully inadequate enclosures," all of which Maldonado alleges violate the ESA's prohibition against "taking." (ECF No. 1). Now before the Court is PARC's Motion to Dismiss, in which it

---

[1] Tiger King: Murder, Mayhem, and Madness: *Dethroned* (Netflix, released March 20, 2020)

argues Maldonado has no Article III standing to sue under the ESA and thus the Court has no subject matter jurisdiction. (ECF No. 11, 12).[2] PARC's Motion is now fully briefed (ECF Nos. 17, 18, 19)[3] and thus ripe for ruling.

Additionally, the Court issued a Show Cause Order on February 27, 2026 (ECF No. 23) ordering Maldonado's counsel to show good cause, if there be any, for inaccuracies and legal misrepresentations presented in Maldonado's Complaint and briefing. Maldonado's counsel submitted his response on March 27, 2026 (ECF No. 24), accepting responsibility for the misrepresentations but emphasizing that these errors were not made in bad faith. This issue is also ripe for ruling.

## I.      Factual and Procedural Background

Plaintiff Joseph Maldonado is known to many through his public personas—"Joe Exotic" or the self-proclaimed "Tiger King." Maldonado is the former owner and operator of the Greater Wynnewood Exotic Animal Park in Oklahoma, and he is presently incarcerated at the FMC Fort Worth, Texas, with an anticipated release date of March 18, 2036. https://www.bop.gov/inmateloc (last accessed February 24, 2026).[4]

---

[2] PARC's Brief in Support of its Motion nominally references moving to dismiss under Rule 12(b)(2), but no further reference or argument is made as to lack of personal jurisdiction, so the Court need not address this ground further.

Additionally, PARC moves to dismiss under Rule 12(b)(4) and 12(b)(5) for insufficient process and service of process due to the process server allegedly leaving the service documents on the doorstep of one of the property's outbuildings, without personal delivery or delivery through certified mail. *See* ECF No. 12 at 8–13. Because the Court finds it does not have subject matter jurisdiction over Maldonado's claims, the insufficient service argument is moot.

[3] Maldonado moved for leave to file a surreply on November 25, 2025 (ECF No. 19), which the Court granted the following day (ECF No. 20). On December 1, 2025, PARC filed a Motion to Reconsider the grant of the surreply (ECF No. 21), which the Court took under advisement pending the outcome of the motion to dismiss (ECF No. 22). Because the Court dismisses the case for lack of subject matter jurisdiction, PARC's Motion to Reconsider will be denied as moot.

[4] Black Pine has also moved the Court to take judicial notice of Maldonado's Federal Bureau of Prison records, specifically highlighting his anticipated release date. (ECF No. 9). This release date had been noted in the Court's May 22, 2025 Opinion and Order in Maldonado's first attempt at this claim. *See Maldonado v. Professional Animal*

While operating Wynnewood, Maldonado bred, owned, and maintained the bloodlines of numerous big cats, including four now housed at PARC: Prince, Ima, Elvis, and Patronus. Though the tigers are no longer in his care, Maldonado claims he has "deep, profound, specific and concrete interests in the welfare and genetic heritage of the Big Cats in question, having bred and maintained their bloodlines for more than sixteen years" as part of his own breeding program and in partnership with research studies at Texas A&M University. ECF No. 1 at 3–4; *see also* ECF No. 17-1 at 2 ("Between approximately 2004 and 2019, I developed and maintained a controlled breeding program designed to preserve genetic diversity within captive tiger populations. Each tiger was tracked, microchipped, and logged for inclusion in a research database supporting the Tiger Genome Diversity Project at Texas A&M University's College of Veterinary Medicine."). Though currently incarcerated, he has expressed an interest "in seeing these bloodlines maintained and continued for possible further and future research." (*Id.*)

Maldonado alleges in his Complaint that Black Pine is violating the ESA's "take" prohibition for endangered species by "harming," "harassing," and "wounding" the tigers. He asserts the animals are confined in inadequate enclosures that lack sufficient enrichment and force the cats into extended public view. (*Id.* at 13). According to Maldonado, these conditions cause physical and psychological injuries "by depriving them of the ability to express a full range of natural behaviors such as simulated predatory behaviors, investigatory behaviors, and social avoidance behaviors, including the autonomy to choose to engage with or avoid others." (*Id.* at 14). In addition to the inadequate enclosures, Maldonado also objects to the tigers' near-constant proximity to and observation by humans, which can disrupt their natural behavioral patterns. (*Id.*

---

*Retirement Ctr. a/k/a/ Black Pine Animal Sanctuary*, No. 1:25-cv-239, 2025 WL 1474499, at *3 (N.D. Ind. May 22, 2025). Thus, the Court grants Defendant's Motion for Judicial Notice of Government Records (ECF No. 9) and takes notice of Maldonado's scheduled release date.

at 9). Maldonado claims Black Pine is harming the cats by spaying or neutering them without permits required by the federal government, and that these cats undergo these substantial medical procedures not for any legitimate medical need but "to alter their natural behavior, making them more docile, inactive, and to keep them from scent marking, so that they can exhibit and display them for profit to customers, including young children during 'day-camps', and renting out their facility for private parties." (*Id.* at 8). Maldonado asserts that an inspection of Black Pine's tax returns shows the park does not have sufficient funds to properly care for the animals but nevertheless continues to accept more animals into their facility, which he argues further violates the "take" provision of the ESA. (*Id.* at 10).

Maldonado first attempted to bring his claims to this Court on May 16, 2025, but that Complaint was dismissed without prejudice because he did not comply with the ESA's 60-day notice requirement. *See Maldonado v. Pro. Animal Ret. Ctr. (PARC) a/k/a Black Pines Animal Sanctuary,* No. 1:25- cv-239, 2025 WL 1474499 (N.D. Ind. May 22, 2025). Maldonado then filed this Complaint on August 29, 2025, in which he claims the above actions should be considered an unlawful "take" and possession of a protected species under the ESA and asks that the Court enjoin Black Pine from exhibiting, neutering, and possessing the tigers. (*Id.* at 16).

Black Pine filed a Motion to Dismiss on October 24, 2025 (ECF No. 11), arguing that Maldonado has no Article III standing to pursue his claims because he has never visited the cats at the wildlife park nor expressed any intent to visit the cats, and his "research" interest is too speculative to comprise an "injury in fact," (ECF No. 12). Black Pine also asked the Court to dismiss the Complaint due to inadequate service of process. (*Id.*)

In reviewing the briefing for the Motion to Dismiss, the Court noticed Maldonado's filings included a trend of inaccuracies and misleading characterizations of law that suggested a violation

of counsel's duty of candor to the court. Thus, the Court issued a Show Cause Order on February 27, 2026, pointing out the inaccuracies and misrepresentations in the filings and ordering Maldonado's counsel to show good cause, if there be any, why these errors should not result in sanctions for making false statements of fact or law to the Court. (ECF No. 23). Maldonado's counsel responded to the Show Cause Order on March 27, 2026, accepting responsibility for the errors but emphasizing that the errors were not made in bad faith. (ECF No. 24).

## II.     Legal Standard

Under Rule 12(b)(1), a court must dismiss a claim if it lacks subject-matter jurisdiction over it. *See State of Ill. v. City of Chicago*, 137 F.3d 474, 478 (7th Cir. 1998) ("Subject-matter jurisdiction is the first question in every case, and if the court concludes that it lacks jurisdiction it must proceed no further"). As the Supreme Court has instructed, the elements of Article III standing "are not mere pleading requirements but rather an indispensable part of the plaintiff's case, [and] each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.,* with the manner and degree of evidence required at the successive stages of the litigation." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

"When ruling on a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), the district court must accept as true all well-pleaded factual allegations, and draw reasonable inferences in favor of the plaintiff." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995) (citation omitted). Further, "[t]he district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Id.* (citation and quotation marks omitted). The burden of establishing proper federal subject matter jurisdiction rests on the party asserting it. *Muscarello v. Ogle Cnty. Bd. of Comm'rs*, 610 F.3d 416, 425 (7th Cir. 2010).

### III.    Discussion

#### a.  Motion to Dismiss

Article III of the Constitution limits the jurisdiction of federal courts to cases or controversies. U.S. Const. art. III, § 2; *Milwaukee Police Ass'n v. Flynn*, 863 F.3d 636, 639 (7th Cir. 2017). "There is no case or controversy if the plaintiff lacks standing to challenge the defendant's alleged misconduct," *Diedrich v. Ocwen Loan Servicing.*, LLC, 839 F.3d 583, 587 (7th Cir. 2016), and for there to be Article III standing, "the plaintiff must have a 'personal stake' in the case." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021). Requiring a "personal stake" ensures "that the named plaintiff was actually injured and is entitled to an adjudication of the claim asserted, not merely abstractly distressed by unfounded fears or a wrong suffered by the public at large." *Waste Action Project v. Draper Valley Holdings LLC*, 49 F. Supp. 3d 799, 802 (W.D. Wash. 2014) (citing *Friends of the Earth, Inc. v. Gaston Copper Recycling Corp.*, 204 F.3d 149, 154, 156 (4th Cir. 2000)). The plaintiff has the burden of establishing that an actual case or controversy exists, *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 408 (2013), and he must make the required showing "with the manner and degree of evidence required at the successive stages of the litigation," *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992).

Thus, to pursue his citizens' suit under the ESA, Maldonado must show he has suffered an "injury-in-fact," which is an injury that is both "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical'" *Lujan*, 504 U.S. at 560. For purposes of Article III standing, the relevant "injury" is an injury to the *plaintiff*, not an injury to the environment or to the animals at issue. *See Friends of the Earth Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 181 (2000). And though Article III standing requires two additional elements—traceability and redressability—it is the "injury-in-fact" requirement that concerns us here. To that end, PARC

6

argues that Maldonado's case fails for lack of standing because "Maldonado makes no allegation that he has visited the Big Cats during their residence at Black Pine, and he makes no mention of any intent to visit the Big Cats at Black Pine in the future." (ECF No. 12 at 2). PARC also contends that any claim Maldonado might have as a "research interest" due to his past participation in a university research study is too speculative of an injury to give him standing, as Maldonado only mentions "possible further and future research" rather than any ongoing study. (*Id.* at 6 (quoting ECF No. 1 at 4)).

In response, Maldonado presents what amounts to a treatise on the ESA, including its legislative history, its intended "broad scope" of protection, and the potential policy implications should the Court find Maldonado does *not* have standing, all of which make the filing read more like a law review article than a court brief. (ECF No. 17). As to a specific standing "injury-in-fact" argument, Maldonado asserts that federal courts have recognized numerous kinds of ESA injuries—aesthetic, emotional, scientific, informational, professional, and genetic and reproductive interests—and that his "constellation of injuries—including genetic lineage destruction, scientific frustration, informational deprivation, emotional harm and aesthetic loss— falls directly within the categories consistently upheld by federal courts." (*Id.* at 15–16). A review of the cases Maldonado cites, however, show not only little support for his claims but also expose a concerning pattern of legal misrepresentation that hinted at the use of artificial intelligence. At the end of the day, however, Maldonado's Complaint does not sufficiently allege a cognizable injury to himself to demonstrate an injury in fact. Though he claims he has suffered a "constellation of injuries," only two are recognized by caselaw,[5] and his claims fit neither mold.

---

[5] Maldonado attempts to argue that courts have recognized an "informational injury" in cases with "ESA plaintiffs invoking data, research, or observational interests," citing to *FEC v. Akins*, 524 U.S. 11, 21 (1998) and *WildEarth Guardians v. U.S. Dep't of the Interior*, 870 F.3d 1222, 1230 (10th Cir. 2017). (ECF No. 17 at 15). As the Court

First, courts time and again have found an individual plaintiff's aesthetic or recreational interests may constitute an injury sufficient to establish Article III standing, and "the desire to use or observe an animal species, even for purely esthetic purposes, is undeniably a cognizable interest for purpose of standing." *Lujan*, 504 U.S. at 562; *Laidlaw*, 528 U.S. at 183; *Animal Legal Def. Fund, Inc. v. Glickman*, 154 F.3d 426, 437 (D.C. Cir. 1998) (collecting cases which recognize "individual plaintiffs' injury in fact based on affronts to their aesthetic interests in observing animals living in humane habitats, or in using pristine environmental areas that have not been despoiled"); *Am. Society for Prevention of Cruelty to Animals v. Ringling Bros. and Barnum & Bailey Circus*, 317 F.3d 334, 337 (D.C. Cir. 2003) ("[A]n injury in fact can be found when a defendant adversely affects a plaintiff's enjoyment of flora or fauna, which the plaintiff wishes to enjoy again upon the cessation of the defendant's actions.").

But a fundamental component of establishing an aesthetic injury is the plaintiff's individual, *personal* use or observation of the animals in the allegedly unlawful conditions, in addition to an intention to view the animals in the imminent future. *See Hill v. Coggins*, 2014 WL 2738664, at *4 (W.D.N.C. June 17, 2014) ("Plaintiffs allege that they want to visit the bears again but are unable to do so while the bears are kept at the Zoo in their current condition because of the additional injury Plaintiffs would suffer from witnessing the bears in these conditions. Such conditional statements that Plaintiffs would return to visit the bears but for the complained of conditions is sufficient to satisfy the pleading requirements for Article III standing."), *aff'd*, 867 F.3d 499 (4th Cir. 2017); *S. Utah Wilderness Alliance v. Palma*, 707 F.3d 1143, 1156 (10th Cir. 2013) ("A plaintiff who has repeatedly visited a particular site, has imminent plans to do so again,

---

mentioned in its Show Cause order, neither case relates to the ESA, and while *Akins* acknowledges that a plaintiff suffers a concrete injury "when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute," *see Akins*, 524 U.S. at 21, it is unclear how that type of injury could be found in this scenario, given that the ESA does not entitle an individual such as Maldonado to any information at all.

8

and whose interests are harmed by a defendant's conduct has suffered injury in fact that is concrete and particularized.").

Maldonado has not pointed to—and the Court could not independently find—any case in which an ESA plaintiff had neither personally observed nor expressed any intention to observe the animals they were seeking to protect. Rather, courts dispose of claims such as this for that very failure. *See, e.g.*, *New England Anti-Vivisection Society v. United States Fish and Wildlife Serv.*, 208 F. Supp. 3d 142, 170 (D.D.C. 2014) ("It is not at all clear that being saddened by the knowledge that an animal you love but with which you have no present contact may be sent to a place in which it will potentially be mistreated—as opposed to *seeing* such an animal in that condition—qualifies an aesthetic harm."). And Maldonado's unsupported and last-minute assertion that he has had "agents" view the tigers on his behalf does nothing to establish that *he* personally has standing. Further, even if he himself had ever visited the tigers at Black Pine, he likely still would not be able to establish standing because he cannot visit them for at least a decade due to his present incarceration,[6] making any alleged future injury far too speculative to support a finding of Article III standing at this time. *See Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require.").

Beyond an aesthetic or recreational interest, one court in the First Circuit recognized an ESA injury based on a plaintiff's impacted "scientific" or "research" interest. In *Strahan v. Coxe*, 939 F. Supp. 963 (D. Mass. 1996), *aff'd in part and vacated in part*, 127 F.3d 155 (1st Cir. 1997),

---

[6] The Court also notes that the United States Supreme Court quite recently denied Maldonado's petition for writ of certiorari in his criminal case, essentially closing the book on any hope he may have had to observe the tigers at Black Pine in the next decade. *See Maldonado-Passage v. United States*, No. 25-1025, 2026 WL 858459 (U.S. Mar. 30, 2026)

the plaintiff alleged in an affidavit that he routinely went on whale watching tours and that he was a conservation biologist engaging in scientific research on the Northern Right whale, which the district court concluded was sufficient to show that Strahan had suffered an "injury in fact." Maldonado claims he has suffered a similar injury because he "bred these cats as part of an ongoing research study" and thus he has "a compelling interest in the bloodlines being maintained and continued into the future," an interest which would undoubtedly be dashed by the cats' sterilization at Black Pine. (ECF No. 1 at 14). But even if *Strahan* were precedential in this circuit, the pleadings and briefings give no indication that Maldonado personally is engaging in any research at this time. Indeed, Maldonado's own affidavit attests to only his *past* engagement with a research program:

> Between approximately 2004 and 2019, I developed and maintained a controlled breeding program designed to preserve genetic diversity within captive tiger populations. Each tiger was tracked, microchipped, and logged for inclusion in a research database supporting the Tiger Genome Diversity Project at Texas A&M University's College of Veterinary Medicine. Through that program, I provided biological samples, pedigree information, and DNA sequencing data used to identify genetic markers relating to fertility and congenital conditions in tigers. This work produced verifiable data, supported by correspondence with university researchers, showing that the lineages I established contributed to ongoing scientific studies.

(ECF No. 17-1 at 2). Even if the university's research project is ongoing, nothing leads the Court to believe that Maldonado, while incarcerated, is continuing to personally engage in any research whatsoever, and his hopes to re-engage with that project in the future are likewise too speculative to establish standing. *See Lujan*, 504 U.S. at 564.

The only thing clear at this point is that Maldonado has strong feelings about these cats—but those strong feelings and his hope to work with them in the future are not enough to give this Court subject matter jurisdiction over his claims. *See Ringling Bros.*, 317 F.3d at 337 (rejecting plaintiff's argument that he has standing due to his desire to work with the elephants in the future because the court "can be sure that the prospect of his working in the elephant barns again is nil").

Because Maldonado cannot establish Article III standing, the Court must dismiss his suit for lack of subject matter jurisdiction.

### b. Sanctions

As the Court conducted its own research to resolve PARC's Motion, it noticed Maldonado's Complaint and briefing included multiple inaccurate citations and misleading characterizations of law. These inaccuracies included citations to cases that existed but could not be located at the given citation and in no way supported the propositions for which they were cited, as well as multiple references to numerous cases which could be located but nevertheless in no way supported Maldonado's contentions. These inaccuracies and misrepresentations led the Court to suspect counsel used generative AI to produce these filings, in part or in full, and it issued a Show Cause Order on February 27, 2026, ordering Maldonado's counsel Roger Roots to explain these errors and why he should not be sanctioned for his apparent misconduct. (ECF No. 23).

Roots submitted his response to the Court's Order on March 27, 2026, in which he accepts responsibility for the errors and attempts to explain how they came to be. (ECF No. 24). According to Roots, his paralegal was undergoing a medical emergency at the time the response was due and inadvertently filed an earlier, uncorrected working draft of the response brief. Although he does not directly address the use of AI for the filings, that use can be read between the lines. *See id.* at 4 (listing remedial measures taken by counsel, including a pledge that he "will not rely on AI-assisted or database-generated research summaries, citation suggestions, or automated citation-formatting output in any filed submission unless the underlying authority and proposition have first been independently verified"); *see also id.*, Dec. of Paralegal Lambert, at 7 (admitting knowledge that earlier drafts of filings "included older research notes, secondary summaries, and preliminary citation suggestions generated or compiled during electronic legal research, including

Lexis research tools and AI-assisted research features"). While acknowledging that counsel—as the one signing the filings—ultimately remains responsible for what is submitted to the court, Roots nevertheless asserts that these errors were not made in bad faith. Along with his response to the Court's Show Cause Order, he submitted a signed declaration by his paralegal, an "Errata and Corrected Authorities" in which he withdraws his use of nearly every case he cited in support of his client's standing, and a "Corrected Response in Opposition to Defendant's Motion to Dismiss"[7] in which he presents an "updated" response brief with a standing argument containing little to no relevant caselaw. *See id.* at 20–24.

While the Court appreciates counsel's response, it is still troubled by the carelessness displayed here. Over three months passed before the Court pointed out these blatant errors, during which time Roots filed a surreply not only discounting as inapplicable the very cases he had cited in his response but also defending the extraordinary length of that brief. And that defense leads the Court to question the veracity of his assertion that the ten-page "Corrected Response" was the version Roots originally intended to file. Indeed, if Roots intended only to file a short brief, he should have caught on that the wrong version was filed when PARC's reply noted an objection to pages 26–37 of Maldonado's response brief as violative of Local Rule 7-1(e)(1) (ECF No. 18 at 1 n.1). At that time, Roots should have notified the Court and PARC of his mistake. Instead, he doubled down to defend the lengthy brief as indicative of "[t]he complexity and importance of the issues here—including questions of ESA standing, jurisdiction, and citizen-suit enforcement . . . ." (ECF No. 19 at 15). So, which is the Court to believe: that the extraordinarily long brief was

---

[7] On March 30, 2026, PARC filed a motion requesting the Court set a briefing schedule for PARC to respond to Maldonado's "Corrected Response in Opposition to Defendant's Motion to Dismiss." (ECF No. 25). Though the corrected response does nothing to bolster Maldonado's standing argument, because the Court has found it lacks subject matter jurisdiction and must dismiss the case, PARC's request is denied as moot.

intentional and should be considered despite its violation of the Local Rules, or that the same brief, riddled with errors, was inadvertently filed instead of a shortened, seemingly more correct brief?

The Court remains unconvinced that it should be lenient in addressing Roots's clear abdication of his duty of candor. Federal Rule of Civil Procedure 11 provides in relevant part:

> By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances: . . . (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law . . . .

Fed. R. Civ. P. 11(b). If the Court determines that Rule 11(b) has been violated, in may impose an appropriate sanction on the attorney that violated the rule. Fed. R. Civ. P. 11(c)(1).

The standard for imposing Rule 11 sanctions is "an objective determination of whether a sanctioned party's conduct was reasonable under the circumstances." *Brown v. Fed'n of State Med. Bds. of the U.S.*, 830 F.2d 1429, 1435 (7th Cir. 1987), *overruled on other grounds by Mars Steel Corp. v. Cont'l Bank N.A.*, 880 F.2d 928 (7th Cir. 1989). Included in that inquiry is a determination of "whether the party or attorney made a reasonable inquiry into the law." *Id.* The Seventh Circuit has long held:

> Rule 11 requires counsel to study the law before representing its contents to a federal court. An empty head but a pure heart is no defense. The Rule requires counsel to read and consider before litigating. Counsel who puts the burden of study and illumination on the defendants or the court must expect to pay attorneys' fees under the Rule. . . . The point, rather, is that every lawyer must do the necessary work to find the law *before* filing the brief. It is not acceptable to make an assertion of law and hope that it will turn out to be true.

*Thornton v. Wahl*, 787 F.2d 1151, 1154 (7th Cir. 1986) (internal citations removed). Further, in this Circuit "[g]ood faith is not a defense to the imposition of Rule 11 sanctions." *Ordower v. Feldman*, 826 F.2d 1569, 1574 (7th Cir. 1987). "Right to it, all litigants—represented and

unrepresented—must read their filings and take reasonable care to avoid misrepresentations, factual and legal." *Jones v. Kankakee Cnty. Sheriff's Dept.*, 164 F.4th 967, 970 (7th Cir. 2026).

In imposing Rule 11 sanctions, the court must keep in mind the guiding principle that it should order only "the least severe sanction adequate to serve the purpose" for which it is being imposed. *Brown*, 830 F.2d at 1437 (quoting *Cabell v. Petty*, 810 F.2d 463, 466 (4th Cir. 1987)). That includes imposing fines on careless or reckless lawyers "who unnecessarily burdened opposing counsel or the court." *Mid Cent. Operating Eng'rs Health & Welfare Fund v. HoosierVac LLC*, No. 2:24-CV-00326, 2025 WL 574234, at *3 (S.D. Ind. Feb. 21, 2025) (citing *Thornton*, 787 F.2d at 1154), *adopted as modified*, No. 2:24-CV-326, 2025 WL 1511211 (S.D. Ind. May 28, 2025); *see also Bigelow v. Dell Techs. Inc.*, No. 25-3007, 2026 WL 813756, at *8 (10th Cir. March 24, 2026) ("[A] litigant's failure to verify the accuracy of the authority cited results in waste of both judicial resources and the opposing party's time and money, and it can damage the credibility of the legal system."). And while compensation is "an important consideration . . . [a]n even more important purpose is deterrence." *Brown*, 830 F.2d at 1438.

It is abundantly clear that Roots did not make the requisite reasonable inquiry into the law in crafting both the Complaint and the response to PARC's Motion to Dismiss. Had he done his due diligence for either filing, he would have discovered that the opinions and citations he provided were woefully mispresented or else nonexistent. Whether these incorrect filings are the work of generative AI or counsel's own sloppiness, the resulting errors and legal misrepresentations are glaring. And while the Court appreciates Roots' acceptance of some responsibility, these issues nevertheless warrant sanctions.

Thus, the Court concludes the following sanctions are appropriately tailored to the conduct and circumstances in this case: First, within 30 days of the filing of this decision, Maldonado's

14

counsel Roger Roots is ordered to pay to the Clerk of Court the amount of $1,500.00 for his repeated violations of Fed. R. Civ. P. 11(b)—$500 for each filing which relied on incorrect or nonexistent citations or else included blatant misrepresentations and mischaracterizations of the law and an additional $500 for his admitted failure to review the documents he signed and filed with this Court. The Court notes that such a monetary sanction is at the low end of fines imposed by courts in similar circumstances. *Compare Jackson v. Auto-Owners Ins. Co.*, No. 7-24-cv-136, 2025 WL 1932274, at *5 (M.D. Ga. July 14, 2025) (imposing a $1,000 fine for the submission of filings with hallucinated cases), *and Gauthier v. Goodyear Tire & Rubber Co.*, No. 1:23-CV-281, 2024 WL 4882651, at *3 (E.D. Tex. Nov. 25, 2024) (imposing $2,000 sanction on attorney who submitted a response "without reading the cases cited, or even confirming the existence or validity of the cases included therein")*, with Mata v. Avianca, Inc.*, 678 F. Supp. 3d 443 (S.D.N.Y. 2023) (sanctioning attorneys $5,000 for producing a filing with citation to an opinion which did not exist) *and HoosierVac LLC*, 2025 WL 1511211, at *2 (imposing sanction of $6,000 for filing briefs containing non-existent AI-generated legal citations).

Second, the Court directs the clerk's office to transmit a copy of this Opinion and Order—as well as a copy of the Show Cause Order (ECF No. 23) which more explicitly details counsel's misconduct—to the appropriate attorney-disciplinary authority of the State of Rhode Island where Roots is licensed. *See, e.g.*, *Amarsingh v. Frontier Airlines, Inc.*, No. 24-1391, 2026 WL 352016, at *8 (10th Cir. Feb. 9, 2026) (referring attorney to relevant disciplinary body); *Park v. Kim*, 91 F.4th 610, 616 (2d Cir. 2024) (same); *Johnson v. Dunn*, 792 F. Supp. 3d 1241, 1267 (N.D. Ala. 2025) ("[T]he referral to licensing authorities is a bare minimum in the light of the primary nature of a lawyer's professional responsibility not to make things up.").

**IV.    Conclusion**

For these reasons, the Court:

(1) GRANTS PARC's Motion for Judicial Notice of BOP Record (ECF No. 9);

(2) GRANTS PARC's Motion to Dismiss (ECF No. 11) for lack of Article III standing and DISMISSES the case for lack of subject matter jurisdiction;

(3) DENIES AS MOOT PARC's Motion for Reconsideration (ECF No. 21) and Motion to Set Briefing Schedule (ECF No. 25);

(4) ORDERS Maldonado's counsel, Roger Roots, to pay $1,500.00 to the Clerk of Court for violating Fed. R. Civ. P. 11(b)(3); and

(5) DIRECTS the Clerk to send a copy of this Opinion and Order, and a copy of the Show Cause Order (ECF No. 23), to the attorney-disciplinary authority for the State of Rhode Island Judiciary at:

> Office of Chief Disciplinary Counsel
> Philip W. Noel Judicial Complex
> 222 Quaker Lane – Room #1083
> Warwick, RI 02886

**SO ORDERED** this April 1, 2026.

s/ Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT

16